## DAVID M. RHEA v. THE UNITED STATES.
### (Filed July 30, 1897.)

1. CRIMINAL LAW—*Judgment and Sentence Defective—Effect of*. It is error for the trial court to fail to inform defendant, before passing sentence upon him, of the nature of the indictment, his plea and the verdict, and to fail to state, in the judgment or sentence, the crime of which defendant has been convicted, but the only effect of such errors would be to require defendant to be returned to the court wherein convicted for proper judgment and sentence.

2. INDICTMENT—*Sufficiency of—Defects Waived*. All defects in an indictment, except that it does not state facts sufficient to constitute a public offense, or to give the court jurisdiction, are waived by defendant upon his failure to challenge the sufficiency of same with a motion or demurrer.

3. INSTRUCTIONS—*Not Reviewable, When*. The giving, or refusing, by the trial court, of instructions based upon and applicable to particular phases of the testimony will not be reviewed by this court unless the evidence is contained in the record filed herein.

4. EXCEPTIONS TO INSTRUCTIONS—*Sufficiency of*. Where the court's charge to the jury is in separate instructions which are properly numbered and, at the conclusion thereof, the record shows that, "to the giving of each and every and all of said instructions to the jury by the court, the defendant excepted separately at the time and still excepts;" *held*, sufficient to entitle appellant to have his objections to said instructions passed upon by this court.

5. INTEREST OF DEFENDANT—*Instruction Thereon—Province Of Jury*. An instruction to the effect that, in determining the credibility of defendant, and the weight to be given his testimony, the jury should consider the fact that he is the defendant and the

Rhea v. The United States.

interest which he has in the result of the trial, and also that, "in determining the weight to be given to the testimony of a defendant, you should take into consideration the testimony of all the other witnesses, and also such facts and circumstances as are in proof in the case, and, with the testimony of the other witnesses and such facts and circumstances, determine how much weight and credit you should give to the testimony of the defendant, and, after such consideration, give it such weight and credit as in your judgment it is entitled to under all of the facts and circumstances and other testimony in proof in the case," does not invade the province of the jury, and is not prejudicially erroneous. (Keaton, J., and McAtee, J., dissenting.)

6. CHANGE OF JUDGE—*Application for—Sufficiency Of—Construction Of Statute.* When an application, in the language of the statute, for a change of judge, in a criminal action, because "of the bias and prejudice of the presiding judge," is filed and presented before the commencement of the trial, it is not reversible error for the court to refuse same, under subdivision 4, sec. 21, ch. 41, Session Laws, 1895. (Keaton, J., dissenting.)

(Syllabus by the Court.)

*Error from the District Court of Lincoln County; before Frank Dale, District Judge.*

*L. E. Payne,* for plaintiff in error.

*C. R. Brooks* and *Roy Hoffman,* for defendant in error.

David M. Rhea, the defendant below, was indicted and tried for breaking and entering a building used, in part, as a United States post office and was convicted of said offense, and from the judgment of conviction appeals. Affirmed.

The facts are stated in the opinion.

Opinion of the court by

KEATON, J.: Twelve assignments of error are set out in appellant's petition in error and urged in his brief, and I shall notice them in their inverse order in so far as they are properly presented by the record filed in this court, and as a consideration thereof is deemed necessary to properly dispose of the case

I. The twelfth assignment is that, "No judgment was rendered or entered therein, in said case, as provided by law." The judgment complained of, omitting the caption, is as follows:

"Comes now the said defendant, David Rhea, in his own proper person, and by his attorney, L. E. Payne, and presents his motion for a new trial. The court having heard the motion, together with the arguments of counsel thereon, and being fully advised, does now overrule defendant's said motion for a new trial, to which ruling the defendant duly excepts. The defendant now files and presents his motion in arrest of judgment, which motion is by the court heard, together with argument of counsel thereon, and overruled, to which ruling the defendant excepts. The defendant is now ordered to stand before the bar of the court and is asked what he has to say why the sentence and judgment of the court should not be pronounced against him, and having nothing justifiable to offer, the court now passes judgment and sentence upon said defendant:

"It is the judgment and sentence of the court that the defendant, David M. Rhea, be trasported to the United States penitentiary, at Leavenworth, Kansas, and be confined therein for a period of three (3) years, and to pay the costs of this prosecution, to which judgment and sentence of the court the defendant objects and duly excepts."

The objections urged against this judgment of the trial court are as follows:

"1. Because it is not stated when the term of imprisonment commences.

"2. Because the journal entry is not signed by the judge.

"3. Because the sentence does not state what offense the defendant was guilty of.

"4. That the defendant was sentenced to the United States penitentiary, at Leavenworth, Kansas, when it should have been Fort Leavenworth, Kansas.

"5. Because the sentence and journal entry do not contain the words: 'It is considered, ordered and adjudged.'

"6. Because the record does not show that when the defendant appeared for judgment, he was informed of the nature of the indictment, of his plea, and of the verdict."

I do not think there is any merit in the second, fourth and fifth objections. Had not the question raised by the first objection already been decided by this court adversely to the contention of appellant herein, I should be inclined to regard it of a more serious character than did the learned justice who delivered the opinion of the court in the case of *Jones v. Territory*, 4 Okla. 45, wherein it is held that, "The third assignment is, 'the judgment fails to state the date at which the sentence shall commence;' there is nothing in this objection. All judgments and sentences in criminal cases take effect and begin to operate from the date of their entry, unless a different time be fixed by the court in the judgment itself. There is no uncertainty as appears from the record before us."

I am of the opinion, however, that the third and sixth objections are well taken and that the proceedings and judgment had and entered at the time appellant was sentenced are irregular because of the failure of the court to inform him of the nature of the indictment, his plea and the verdict and to state in said judgment the crime for which he had been convicted. Section 5283, Okla. Stat. 1893, provided that:

"When the defendant appears for judgment, he must be informed by the court, or by the clerk under his direction, of the nature of the indictment, and his plea and

the verdict, if any thereon, and must be asked whether he has any legal cause to show why judgment should not be pronounced against him."

But, perhaps, the only effect of these errors would be to have the appellant remanded to the district court of said county for proper judgment and sentence. (*State v. Jennings*, 24 Kan. 460; *Messner v. People*, 45 N. Y. 1; *Dodge v. People*, 4 Neb. 220; *Benedict v. State*, 12 Wis. 313.) In *Dodge v. People*, *supra*, it is held that, "A person convicted of felony cannot waive his right to be present in court, at the time sentence is pronounced, and he must be 'informed by the court of the verdict of the jury, and asked whether he has anything to say why judgment should not be pronounced against him.' As it does not appear that these requirements of the statute have been complied with, the judgment must be reversed, and an order directed to the court below, to proceed to render judgment on the verdict in the manner prescribed by law."

In justice to the defendant, we do not feel authorized to require him to be returned and re-sentenced, as he has now served the greater portion of the time for which he was originally sentenced.

II. The tenth and eleventh assignments of error are directed against the indictment, claiming that it is "bad for duplicity, charging several offenses in one count thereof." Said indictment, omitting the formal parts, is in the following language:

"The grand jurors do find and present that at and within said Lincoln county, in said Territory, on the eighteenth day of July, in the year of our Lord, one thousand, eight hundred and ninety-four one David Rhea, at the town

of Chandler, aforesaid, in the county and district afore-
said, a certain building there situated and then used in
part as a post office of the said United States, wilfully,
unlawfully and feloniously, did forcibly break into and
enter, with intent the moneys, postage stamps, goods and
chattels of the said United States in the said building
there being, and the moneys, goods and chattels of one
A. D. Wright, in said building, then being, then and there
feloniously to steal, take and carry away."

This indictment was drawn under section 5478 R. S.
United States, which reads as follows:

"Any person who shall forcibly break into, or attempt
to break into, any post office, or any building used in
whole or in part as a post office, with intent to commit
therein larceny, or other depredation, shall be punishable
by a fine of not more than one thousand dollars and by
imprisonment at hard labor for not more than five years."

The defendant below, so far as the record in this court
discloses, neither moved to set aside the indictment nor
demurred thereto, and has, therefore, waived all objec-
tions to same, except that it does not state facts sufficient
to constitute a public offense, or to give the court juris-
diction of the subject matter. (Sections 5119, 5126 and
5271 Okla. Stat. 1893; sections 19 and 20, ch. 41, Session
Laws 1895; *Wright v. Territory*, 5 Okla. 78)

The indictment is clearly good as against the only two
objections which defendant could raise thereto for the
first time by his motion in arrest of judgment. His coun-
sel, however, further contends that his motion, filed and
presented at the conclusion of the testimony for the gov-
ernment, to require the prosecution to elect upon which
offense set forth in the indictment it will rely for a con-
viction, should have been sustained.

The sufficiency of an indictment cannot be challenged in this way. Such a motion is frequently interposed in a case, where the proof on the part of the prosecution establishes, or tends to establish, two or more distinct offenses. (*State v. Schweiter*, 27 Kan. 499; *State v. Crimmins*, [Kan.] 2 Pac. 574.) None of the evidence introduced upon the trial of the case being preserved in the record, this court cannot review the ruling of the trial court on defendant's motion to require the prosecution to elect, etc.

The objections of appellant's counsel to the verdict are disposed of by the determination of the objections to the indictment. The verdict, omitting the caption, is as follows: "We, the jury in the above entitled cause, do upon our oaths find the defendant guilty in manner and form as charged in the indictment. F. R. Vlasak, foreman," and it is contended that, "said verdict is indefinite, uncertain and insufficient, in this: The indictment attempts to charge two offenses in one count thereof, and it is not certain from the verdict of which of the two offenses charged in the indictment the defendant was thereby found guilty, or whether the jury intended to find him guilty of both." It is clear that if the indictment is held to be good the verdict is sufficient.

III. In this third assignment of error appellant's counsel complains of the refusal of the court to give numerous instructions asked by him on the trial of the cause, but, in his brief, only urges that the court erred in refusing to give the first, second and ninth of said instructions, hence these are the only ones I shall consider. The first special instruction asked is as follows:

"The jury are instructed that before they can convict

the defendant, they must be satisfied from the evidence, beyond a reasonable doubt, that the property found in the defendant's possession was recently stolen from the premises described in the indictment, and being so satisfied, from the evidence, that the property was recently stolen, then the possession of the property by the defendant, if the jury find as a fact that the defendant had such possession, may be considered by the jury in connection with all the other circumstances in the case."

It is doubtful whether said instruction properly states the law applicable to any case, and this court certainly cannot say that its refusal is prejudicial error in the absence of all the testimony introduced upon the trial. How is this court to know that there was not sufficient testimony to authorize a conviction independently of the question of the recent possession of the alleged stolen property? The ruling of the trial court upon an instruction of this character cannot be reviewed in the absence of the testimony. (*Head v. Dyson,* 31 Kan. 74, 1 Pac. 258; *Board Co. Com'rs Allen Co. v. Boyed,* 31 Kan. 765, 3 Pac. 523; *Gatliff v. Territory,* 2 Okla. 523; *Welsh v. Savery,* 4 Iowa 241.)

The second instruction asked and refused is as follows:

"The mere fact, if it be a fact, that the evidence may show beyond a reasonable doubt that the building named in the indictment was broken and entered as charged in the indictment, does not authorize you to convict the defendant, and raises no presumption that he is guilty of the crime charged, and does not cast upon him the burden of proving his innocence."

If any error was committed in refusing this instruction, it was cured by giving the following, which appears in the trial court's general charge to the jury:

"You are instructed that if you are satisfied beyond a reasonable doubt, that the building named in the indictment was broken and entered as charged in the indictment, this fact alone does not warrant you in finding the defendant guilty; and does not raise a presumption of his guilt; and does not cast upon him the burden of proving his innocence, and unless the prosecution has gone farther and established beyond a reasonable doubt, that this defendant and not some other person, broke and entered said building, the defendant must be acquitted."

The ninth instruction asked and refused is in the following language:

"The court instructs the jury that the defendant is a competent witness in his own behalf and as such witness he has testified in this case, and it is your duty to take into consideration his testimony and give it such weight as in your judgment it is entitled to."

This instruction was, in my judgment, properly refused, but I shall state the grounds for this conclusion more fully in the next succeeding paragraph of this opinion.

IV. In the fourth assignment of error appellant's counsel avers that, "The court erred in each and every and all of its instructions given to the jury." Counsel for appellee insist that the only exception saved to the instructions given is a general one to the whole charge and is insufficient if any portion of said charge is correct, and cite, in support of this contention, the following decisions of the supreme court of the United States: *Van Stone v. Stillwell*, 142 U. S. 135; *Burton v. West Jersey Ferry Company*, 114 U. S. 474; *Lucas v. Brooks*, 18 Wall. 436; *Bogk v. Gassert*, 149 U. S. 17, wherein it is held, in substance, that a general exception to the charge of the trial court will not be considered. The exceptions to the instructions given by the court below in this case, as ap-

pears from the record, are as follows: "To the giving of each and every and all of said instructions to the jury by the court the defendant excepted separately at the time and still excepts." The charge is given in separate instructions which are numbered, and the exceptions appear at the conclusion thereof. In *Kansas Pac. Ry. Co. v. Nichols*, 9 Kan. 236, it is held that, "A general exception to a whole charge is insufficient if any portion of the charge is correct; but where the record of the exceptions reads as follows, to-wit: To the giving of which instruction and to *each and every portion thereof*, said defendant by its counsel *then and there duly excepted* the supreme court will presume that exceptions were duly taken to each and every portion of the charge separately. Such has been the uniform practice of this court." (See also *Marbourg v. Smith*, 11 Kan. 561; *Wheeler v. Joy*, 15 Kan. 390; *Atchison, T. & S. F. Ry. Co. v. Retford*, 18 Kan. 250; *Fullenweider v. Ewing*, 25 Kan. 70; *Bard v. Elston*, 31 Kan. 274, S. C. 1 Pac. Rep. 565.)

While the method pursued is not to be commended, I thing the exceptions to the instructions of the lower court sufficient to entitle appellant's counsel to have his objections thereto considered by this court. It is also urged by counsel for appellee that, this being a case which invokes the federal jurisdiction of the court, the practice of the United States supreme court regarding the bill of exceptions (or case made) should govern, citing *Van Stone v. Stillwell*, 142 U. S. 128, where it is held that: "In regard to bills of exceptions Federal courts are independent of any statute or practice prevailing in the courts of the state in which the trial was had." This rule does not apply to Territorial courts. (*Stanley v. U. S.* 1 Okla. 336.)

The first of the trial court's instructions complained of in appellant's brief is numbered four and is as follows:

"You are instructed that in order to constitute the crime of breaking and entering, within the meaning of the charge contained in the indictment, it is not necessary that any injury should be done to the building, its doors or windows. Such a breaking may be by lifting a latch, and opening a door, either by entering a door or entering a door not so locked, or by removing anything by which an obstruction to entering the building by the body or any part of it is removed, is a breaking within the meaning of the law."

It is especially urged that the last clause of this instruction is erroneous and, as an abstract proposition, this contention may be correct, but, here again, it is impossible for this court, in the absence of all the testimony, to know whether or not any substantial right of appellant was affected thereby. (Section 5330 Okla. Stat. 1893.) Suppose the evidence showed that appellant entered the building in question by unlocking the door, or by breaking it down, could it be contended that the giving of the portion of the above instruction referred to was prejudicial error? Appellant's counsel also contends that: "The court erred in instructing the jury in its eighth instruction, that if shortly after the goods were stolen from the building they were 'found in possession of the defendant' then such possession should be by the jury considered 'if not properly explained by the defendant, as a circumstance tending to prove the guilt of the defendant,' to be considered with all the conditions and circumstances attending such possession."

The portion of the eighth instruction complained of may be erroneous; see *People v. Abbott*, 34 Pac. 500, where it is

held that: "It is error to charge that the possession of stolen property soon after the taking, while not sufficient to justify a conviction, is a 'guilty circumstance' and that defendant was bound to explain the possession in order to remove its effect;" but it cannot be definitely determined whether it contains prejudicial error or not without an examination of the evidence, and, as before stated, this cannot be done, for the reason that none of it appears in the record.

The next, and only other, instruction of the trial court complained of in the appellant's brief is the following:

"In criminal cases the defendant is a competent witness in his own behalf, but in considering the weight to be given to the testimony of a defendant in a criminal case, you should consider the fact that he is the defendant, the interest which he has at issue in the conclusion to which the jury shall come. But the testimony of the defendant should not be discarded without cause; but in determining the weight to be given to the testimony of a defendant, you should take into consideration the testimony of all the other witnesses and also such facts and circumstances as are in proof in the case, and with the testimony of the other witnesses and such facts and circumstances determine how much weight and credit you should give to the testimony of the defendant, and after such consideration give it such weight and credit as in your judgment it is entitled to under all of the facts and circumstances and other testimony in proof in the case."

While Justices Bierer and Tarsney are somewhat doubtful as to whether or not the foregoing instruction correctly states the law, they do not believe it sufficiently prejudicial to warrant a reversal, and the following is submitted as the views of the writer thereon:

The question raised upon said instruction is now before this court for the first time, except in *Gatliff v. Territory*,

2 Okla. 523, where it is given but a passing notice, hence the exceeding importance of deciding it correctly. After a careful consideration of the question, and notwithstanding the fact that there are a large number of decisions of very able courts holding to the contrary, I am convinced that the instruction is erroneous, prejudicial to the defendant and that such an instruction should never be given in a jurisdiction where the juries are, the sole judges of the facts, including the credibility of the witnesses and the weight to be given to the testimony of each witness. Why should a court be permitted to single out a defendant, who has testified in his own behalf, and call special attention to his interest in the result of a prosecution and instruct the jury to consider same in weighing his testimony, if they are the exclusive judges of his credibility and the weight to be given to his testimony? I heartily endorse the language of Chief Justice Campbell, speaking for the court in *Buckley v. State*, 62 Miss. 705, where, in condemning such an instruction, he says, "There is little danger that juries will be unduly influenced by the testimony of defendants in criminal cases. They do not need any cautioning against too ready credence to the exculpation furnished by one on trial for felony. The accused should be allowed to exercise his right to testify, unimpaired by any suggestions calculated to detract from its value in the estimation of the jury."

A jury may or may not take into consideration the interest of a defendant in passing upon his credibility as a witness and the weight to be attached to his testimony. It is within their province to believe the testimony of a defendant as against that of a number of dis-

interested witnesses.   Every known rule of consistency
would seem to forbid a court from instructing the jury
that, in determining the weight to be given the testimony
of a defendant in a criminal case, they should consider
the fact that he is the defendant and the interest he has
in the result of the trial and then, almost in the same
breath, instruct them that they are the sole and exclu-
sive judges of defendant's credibility as a witness and the
weight which should be attached to his testimony.   If
the jury are the peculiar and only judges of these two
facts, must they not also necessarily be such judges of the
course of reasoning to be pursued and the particular
facts and circumstances (in evidence) to be considered
in determining said two ultimate facts?   It is not more
essential that the jury consider the defendant's inter-
est in the result of the prosecution, in determining the
weight which should be given his testimony, than that
they consider his appearance and demeanor while upon
the witness stand and numerous other things which may
have occurred during the progress of the trial.   If any
instruction, at all, is given, informing the jury as to the
manner of determining the credibility of the witnesses
and the weight to be given their testimony, it should
certainly be a general one, applicable, so far as may be, to
all witnesses produced upon the trial of the case.   Hence,
where a general instruction of this character has been
given, as in this case, it was all the more prejudicial to
the defendant for the trial court to give, in addition
thereto, the instruction under consideration.   This could
have been considered, in no other way, by the jury, than
as an intimation from the court that defendant's testi-
mony should be especially scrutinized before given cred-

ence simply because he was the defendant and, therefore, an interested witness in his own behalf.

In those jurisdictions where the courts are permitted to comment upon the evidence and express their opinions, in their charges to the juries, as to the weight and sufficiency thereof, the rule is, of course, different; and similar instructions to the one given in the case at bar have been sustained; but, in such jurisdictions, the juries understand, in fact, are generally informed by the court, that they are not bound by the opinions of said courts as to questions relating to the credibility, weight, and sufficiency of the evidence, and that the judges, as is their right, have given their views upon these questions for what they are worth. Even in some of those jurisdictions, however, the appellate courts have, very properly, begun to restrict some of the trial judges in their assumed latitude along this line. (*Hickory v. United States*, 160 U. S. 408; *Allison v. United States, Ibid* 203.)

In those jurisdictions where, by organic law, or statute, the courts are required to decide all questions of law and the juries to determine the questions of fact, there should be no blending of these separate functions. Our statute provides that: "On the trial of an indictment, questions of law are to be decided by the court, and the questions of fact are to be decided by the jury; and, although the jury have the power to find a general verdict, which includes questions of law as well as of fact, they are bound, nevertheless, to receive the law which is laid down as such by the court." (Section 5199 Okla. Stat. 1893.)

Under such a statute the rule announced by Mr. Justice Lewis in *Wright v. Commonwealth* is the better and safer

one.   He says: "In a trial for felony, the court should not give instructions directing the attention of the jury to the interest of the witnesses in the result of the trial, or to the consistency or inconsistency of their statements with each other, or with the facts proven in the case." (85 Ky. 123, S. C. 2 S. W. 904.)   But, even conceding that the supreme court of Kentucky has gone too far in restricting the powers of the trial courts upon this question, it is clear that the doctrine announced by Schofield, J., speaking for the court, in *Chambers v. The People*, 105 Ill. 409, is unquestionably correct.   He observes that:

"It cannot be true that the evidence given by the defendant charged with crime is not to be treated the same as the evidence of other witnesses.   It could not even be true, as a universal proposition, that, as matter of law, it is not to have the same effect as the evidence of other witnesses.   Many times it certainly cannot have that effect, but there are times when it can and should,— and of this the jury are made the judges."

The same rule is announced in a recent case by Mr. Justice Haney of the South Dakota supreme court, wherein he says:

"The defendant excepted to the following portion of the charge: 'You are instructed that under the statutes of this state a defendant in a criminal case may be a witness in his own behalf.   But you are further instructed that it is your duty to take into consideration, in weighing his testimony, the fact that he stands charged with the commission of the crime; that the result of the case under consideration is to him of the most vital importance; and, bearing this in mind, you are to give to his evidence such weight and credence as, in your sound judgment, you may consider it entitled to.'   Defendant also excepted to the following part of the charge:  'And the proof in support of it is such as is furnished by co-

defendants, and relatives and friends of the defendant or his co-defendants. It is the duty of the jury to take into consideration the interest of the defendant and his co-defendants, and the natural interest or sympathy of his relatives, or the relatives of his co-defendants, or his and their friends.' The court here refers to the effort of the defendant to prove an *alibi*. It certainly was the duty of the jury to consider the interest of the defendant, his co-defendants, and their relatives in the event of the action. Evidence cannot be weighed, by persons of ordinary intelligence and experience, without giving attention to the evident feelings and interest of witnesses. It is always proper for trial courts to remind jurors of their duty in this respect, but we cannot commend the manner in which it was done in this case. They should have been directed to consider the interest, if any, as shown by the evidence, of each witness, without specifying any particular person or class of persons, and to give to the testimony of each such weight as the jurors believed it entitled to, in view of all the evidence. The testimony of each witness should be subjected to the same test, and the court should studiously avoid any expression calculated to discredit any particular portion of the testimony." (*State v Smith*, 67 N. W. 619.)

The decision was affirmed in the case last cited on the ground that, while the instructions were erroneous, no substantial right of defendant was prejudiced thereby, but the learned judge, who rendered the opinion, states no reason for this conclusion. If such instructions are not prejudicial to a defendant, then it seems to me that an instruction could hardly be framed that would be. In the case of *State v. Nordstrom*, 35 Pac. 382, the supreme court of Washington says:

"In giving the usual cautionary charge to the jury as to the credit to be given to witnesses, the court uses this language: 'In the case of the defendant, you have a right

to consider the great interest he has in your verdict.' The statement was true; a jury has a right to consider the interest of every witness, (*Dodd v. Moore*, 91 Ind. 522,) and the court does not err in so instructing. Whether, in a criminal case, where the defendant testified under peculiar circumstances, he ought to be singled out as pointedly as was here done, may be questionable, but no point is made on that."

The supreme court of Indiana, upon a decision of which the above holding would seem to have been based, has repeatedly held that such an instruction is ground for reversal. In *Unruh v. State*, the supreme court of the latter state says:

"The sixth instruction given by the court is as follows: 'The relatrix and defendant have testified, and they are both interested in the event of the suit. This fact should be considered in weighing their evidence, in connection with the other facts and circumstances which I have indicated apply to witnesses generally.'

"We think that this instruction is also erroneous. It very clearly discredits the parties named because they are interested in the event of the suit. The charge is that it was the duty of the jury to consider the fact that the parties named were interested in the event of the suit. The jury would not understand that, on account of that interest, greater weight was to be given to the testimony of interested parties. Very clearly, they understood that they were to give less weight to that testimony. In speaking of a similar case, it was said, in the case of *Dodd v. Moore*, 92 Ind. 397:

"'The jury have the right, in all cases, in weighing and settling conflicts in testimony, to consider the interest which the witnesses may have in the result of the litigation; and it is proper to instruct them that they may exercise that right. It may be that in many cases witnesses unconsciously warp and color their testimony by reason of interest, and it may be that in many instances

witnesses purposely falsify by reason of such interest; but whether such is the fact in any given case is a question of fact to be left to the jury. Surely, the courts cannot say, as a matter of law, that because a witness may have an interest in the litigation, less weight should be given to his testimony.'

"The reasons that condemned the instruction in that case condemn the above instruction in this case. See also, as in point, *Woolen v. Whitacre*, 91 Ind. 502, and cases there cited; *Nelson v. Vorce*, 55 Ind. 455; *Greer v. State*, 53 Ind. 420; *State v. Sutton*, 99 Ind. 300; *Hartford v. State*, 96 Ind. 461; Thomp. Charg. Jur. 58, 59.

"Here, again, the instruction applies alike to the relatrix and to appellant, but that in no way cures the error. But for the instructions casting discredit upon appellant's testimony because of his interest, the jury might have given full credit to his testimony, and rendered a different verdict."

Then, after stating a portion of another objectionable instruction and commenting thereon, the court concludes as follows:

"In these instructions, the court not only invaded the province of the jury, but indicated to them that, as a matter of law, the testimony of some of the witnesses was entitled to less credence than the testimony of others. For these reasons the judgment must be reversed." (4 N. E. 453.)

In *Bird v. State*, said supreme court pass upon and very severely condemn another instruction quite similar to the one given in the case at bar:

"The sixth instruction was as follows: 'The defendant has testified in his own behalf. In weighing his testimony, the fact that he is the defendant, and therefore deeply interested in the result of the prosecution, should not be overlooked, but it does not follow that because of his interest you should disregard his testimony, or refuse

to give him credit. Innocent men are some times charged with the commission of grave offenses. If the defendant's testimony, when compared with all the other facts and circumstances in evidence, is consistent and harmonious, it may have a controlling weight in deciding the case, but the weight it shall have is a matter left wholly to your consideration and judgment.'

"This instruction cannot be sustained. Very clearly it discredits the testimony of appellant. It is equivalent to telling the jury that it was their duty to keep in mind the fact that appellant was the defendant, and that his testimony, for that reason, could not be taken as of controlling weight unless consistent with all the facts and circumstances in evidence. The other facts and circumstances, doubtless, were inconsistent with his testimony; otherwise, his testimony would not have been material to him; and otherwise, doubtless, he would not have been convicted. His testimony, without doubt, was intended to explain, or to meet and overthrow, the adverse facts and circumstances in evidence; and, if it could be of controlling weight in the decision of the case only in the event that it was consistent with those facts and circumstances, it could be of no avail to him in the way of a defense. The statute makes the evidence of the accused competent in his own behalf; and, when he goes upon the witness stand, he has a right to put his evidence before the jury unprejudiced by any adverse criticism by the court. He has a right to ask that his testimony, alone and unsupported, shall be taken as of controlling weight in the case if the jury think proper, whether it is consistent or inconsistent with all the other facts and circumstances in evidence. It is true, the jury were also instructed that they were the judges of the credibility of the witnesses, including appellant; but, as to him, that must be limited by the portions of the sixth instruction above commented upon. From them the jury would understand that, while they might judge of his credibility, it was under the injunction to keep in mind that he was

the defendant, and 'deeply interested in the result of the prosecution,' and that his evidence could not be of controlling weight in the decision of the case, unless consistent with the facts and circumstances in evidence against him. That appellant was an interested party is a fact that the jury might consider in weighing his testimony, and it would have been proper to instruct them that they might exercise that right; but it was not proper to so instruct them as to impose a consideration of his interest as a duty, and thereby cast discredit upon his testimony in advance, and to destroy the controlling effect of his testimony in advance, unless it should be consistent with the testimony against him." (8 N. E. 14.)

It will be observed that, in the instruction under consideration, the trial court uses the following language: "But in determining the weight to be given to the testimony of a defendant, you should take into consideration the testimony of the other witnesses and also such facts and circumstances as are in proof in the case, and with the testimony of the other witnesses and such facts and circumstances determine how much weight and credit you should give to the testimony of the defendant."

This portion of said instruction, besides being quite indefinite and confusing, practically informed the jury that the weight and credit to be given defendant's testimony should be determined from a consideration of the other evidence in the case and, also that a different method should be applied in ascertaining the weight and credibility of defendant's testimony from that applied to the testimony of the other witnesses. To sustain such an instruction would be to do violence to the statute, to rob defendants, in criminal cases, of all the practical benefits of their legal right to testify in their own behalf, and to authorize the invasion, at will, by the trial courts, of the

sacred province of the juries of our young and promising commonwealth. See *State v. White*, 39 Pac. 160, where the supreme court of Washington, in condemning a similar instruction, says: "It was argumentative and cautionary, and placed the defendant in a different class from that of the other witnesses. Moreover, it laid it down as the duty of the jury to scrutinize his testimony in a way that tended to discredit him."

The supreme court of California has repeatedly disapproved instructions of this character, but, owing to an early decision sustaining such an instruction, that court has, very reluctantly, declined to reverse the judgments of the lower courts solely because of said instructions if they are given substantially in the language of the one originally approved. The whole question is very thoroughly discussed by said court in the recent case of *People v. Van Eman*, 43 Pac. 520, wherein, among other things, it is said:

"But whether or not the errors above noticed are sufficiently grave to cause a reversal, the judgment and order appealed from must be reversed on account of the instructions given by the court to the jury on the subject of the credibility of the' appellant as a witness. If the question were entirely an open one, we would feel constrained to hold, upon principle, that any instruction at all as to the cerdibility of any witness, or to the weight to be given to his testimony, is violative of section 19 of article 6 of the constitution, which provides that 'judges shall not charge jurors with respect to matters of fact,' and section 1847 of the Code of Civil Procedure, which, referring to a witness, provides 'the jury are the exclusive judges of his ɔredibility.' But in *People v. Cronin*, 34 Cal. 191, which was decided nearly a generation ago, an instruction was approved which stated in general terms

that, when a defendant had appeared himself as a witness, the jury should consider the situation under which he gave his testimony, the consequences to him relating from the result of the trial, and the inducements and temptations 'which would ordinarily influence a person in his situation.' During succeeding years a similar instruction was several times approved, and as district attorneys and trial courts persisted in asking for and giving it on all occasions, it was evident that the rule could not be changed without causing reversals in nearly every case on its way here by appeal. Moreover, the instruction in the Cronin case was very general in its language, and could hardly be construed as an intimation from the judge that he doubted the truth of the defendant's testimony in a particular case, and as therefore it could probably do no harm, it was no doubt better to allow the rule to stand than to disturb the course of justice in many cases by overruling it."

Then, after citing and quoting from many previous decisions of said court in which such instructions were frowned upon, the court further says: "Instructions about the credibility of a defendant as a witness are, no doubt, some times given through habit, or to round out a charge; but, considering the many expressions of opinion, and decisions above referred to, it is difficult to logically attribute the giving of any instruction whatever on the subject to anything else than a purpose to expressly disparage a witness before a jury—the very thing that a court has no authority to do;" and concludes as follows: "And where the language used by a court in commenting on the testimony of a defendant is materilly different from that used in the Cronin case, and we cannot see that the difference has not been prejudicial, the judgment must be reversed. An instruction on the subject that is kept within proper limits is of no real benefit to the

prosecution, and therefore unnecessary; if pushed beyond those limits, it is erroneously prejudicial to the defendant. Justice would therefore be more surely accomplished if no instruction at all were given, and the credibility of the defendant were left entirely to the jury. The correctness and justice of such a course has been frequently pointed out by this court; and if it were followed, there would be no difficulty on the subject."

A careful consideration of all the later decisions of the California supreme court on this subject will suffice to convince any judicial mind that it would have been a much better policy for said court to have promptly and unhesitatingly overruled the doctrine announced in *People v. Cronin,* which has, in effect, been done, by the limitations subsequently placed thereon. As the Cronin case has not only been cited and followed as a precedent by the later decisions of the supreme court of that state, but by many others, (*Haines v. Territory,* 13 Pac. 8), a careful scrutiny of the language used therein on this subject, will, doubtless, prove instructive. It is as follows:

"The instruction of the court in relation to the credibility of the defendant, who offered himself as a witness, was in all respects legal and proper. We do not agree with the learned counsel for the defendant in holding that it is not competent for the court to single out a particular witness and charge the jury as to his credibility. On the contrary, the less abstract the more useful the charge. Jurors find but little assistance in the charge of a judge who deals only in the general and abstract propositions which he supposes to be involved in the case, and leaves the jury to apply them as best they may. The application is some times more difficult than the statement of the rule; hence, that is the most useful charge in which the judge takes up separately the theo-

ries, or each reasonable hypothesis, advanced by counsel or suggested by the testimony, and applies to it the law. In this way, what otherwise might be obscure to the jury is made clear and easy of comprehension. It seldom happens that the exigencies of a case bring in question the credibility of all the witnesses, and when they do not there can be no reason why the charge upon that subject should be made so general as to embrace them all. In our judgment, such a course would be likely to cast suspicion where none is due, and thus tend to mislead the jury. Hence, the judge should confine his charge to those whose credibility has been assailed by counsel or is clouded by the circumstances of the case."

I apprehend that no court under a statute like ours, would now approve such an instruction, on the credibility of witnesses, as that suggested in the opinion in the Cronin case. This court now has the opportunity of preventing the growth and permanent establishment, as a part of our Territorial law, of the very abuse which the supreme court of the state of California has so frequently and persistently complained of, by repudiating so much of the opinion in *Gatliff v. Territory, supra*, as seems to hold that it is proper for a trial court to single out a defendant who testifies upon the trial of a criminal action and call special atention to his peculiar interest in the result thereof for the purpose of prejudicially affecting his credibility as a witness and the weight to be given his testimony.

The supreme court of Missouri has repeatedly criticized instructions of the character of the one under consideration, yet the court has, usually, sustained such instructions under a particular statutory provision. Mr. Justice Sherwood, however, in *State v. Young*, 12 S. W. 879, in a very able and exhaustive dissenting opinion,

18—

lays down the correct principle and holds that the giving of such an instruction is reversible error. He says, in part:

"Complaint is made that the court erred in giving on behalf of the state instructions 12 and 13, which read as follows: 'The court instructs the jury that the defendant is a competent witness in this case; yet, in considering what weight and credibility you will give to his testimony in making up your verdict, you should take into consideration, as affecting his credibility, that he is the accused party on trial. You are further instructed that Kate Young, the wife of the defendant, is a competent witness in this case for the defendant; yet, in considering what weight and credibility you will give to her testimony in making up your verdict, you should take into consideration, as affecting her credibility, that she is the wife of the accused party.' The ground of the complaint is that those instructions invade the province of the jury in regard to what weight should be given to certain testimony. Our statute, (sec. 4220, Rev. St. 1889,) which has remained unchanged on our statute book for a great number of years, provides that 'the court shall not, on the trial of the issue in any criminal case, sum up or comment upon the evidence, or charge the jury as to matter of fact.' There have been numerous decisions on this statute, and many reversals of judgments have occurred, because of the failure of the lower courts to heed the statutory prohibitions."

Then, after citing numerous cases on analogous propositions, he concludes as follows:

"It will thus be seen that the doctrine enunciated in the early opinions of this court, coming down, indeed, to a comparatively recent period, forbids, as does the statute already quoted, any interference by the courts with the province of the triers of the facts. The only province of the court in instruct-

ing the jury is as to the law of the case, if certain facts are found by them to exist, *i e.*, that, if the facts are so and so, then the law is so and so, upon those facts.

"But reference is made to sec. 4218, where it is said that, 'no person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being the person on trial or examination, or by reason of being the husband or wife of the accused, but any such facts may be shown for the purpose of affecting the credibility of such witness;' and this provision, it is argued, gives authority to the court to comment upon, and to instruct upon, the credibility of such witness. This, I take it, is a total misconception of the statute in question, and one which holds for naught the rigid provisions of section 4220 aforesaid. There are many instances where the relations of a witness towards one of the parties litigant may be shown in order to affect his credibility, yet this fact would not alter the statutory rule. Take, for instance, the case of a hostile witness, or of one closely related to the adverse party. No one would doubt that such bias or relationship might be shown in order that the jury might form the proper estimate of his testimony, yet no one would venture to contend that this fact would authorize an instuction to the jury pointing out and commenting on the fact of such relationship or bias. It is one thing to follow the statute, and show certain things to exist in order to call the attention of the jury to them—this is legitimate; but it is another and quite different thing to invade the province of the jury, by giving an instruction to them based on the fact thus legitimately shown in evidence. For this reason I am of the opinion that those cases which announce a different conclusion were improvidently decided, and should no longer be followed. See also *State v. Bryant*, (Mo.) 35 S. W. 597, where it is held that where defendant testified in his own behalf, it was not reversible error to instruct the jury that, in considering his testimony, they should

take the fact into consideration that he was the accused party, though such instruction was improper, in that it used the word 'should' instead of 'may.'"

To same effect is *State v. Fairlamb* (Mo.) 25 S. W. 895 and cases there cited.

A somewhat similar instruction to the one here under consideration was sustained by the supreme court of Arkansas in an elaborate opinion, citing nearly all the decided cases supporting the doctrine, but Wood, J., in concluding upon this branch of the case, for the majority of the court, says: "Because of the difficulty, however, in so framing an instruction, where the defendant's name is mentioned at all, as not to give his testimony undue prominence, either for or against him, it would be better for trial judges to let him pass, with all the other witnesses, under the purview of a general charge as to the credibility of all the witnesses; leaving to the attorneys, in argument, to call the attention of the jury to any peculiar facts applicable to any particular witness." (*Vaughan v. State*, 24 S. W. 885.)

Mr. Justice Battle, in the same case, speaking for himself and Justice Mansfield, upon said instruction, says: "I do not think that a reversible error was committed by giving the separate instruction as to the credibility of Vaughan as a witness, and as to the weight of his testimony, especially when taken in connection with other instructions. But I do think the singling a defendant out, and making his credibility the subject of a separate instruction, may in some cases be highly prejudicial, and that the instruction, as a precedent, deserves severe condemnation and that its repetition in the future should be avoided."

The supreme court of Nebraska has also repeatedly approved instructions of this character, but has done so, apparently, through following precedents and without giving the principle involved careful consideration. In a recent case the question again came before the court upon an instruction in the following language:

"The law makes the defendant a competent witness in his own behalf, and the jury should not discredit his testimony for the sole reason that he is the defendant; still, the jury are the judges of the weight which ought to attach to his testimony; and, in considering what weight should be given to his testimony, the jury should take into consideration all the facts and circumstances surrounding the case as disclosed by the evidence, and the interest of the defendant in the result of the trial, and give the testimony of the defendant only such weight as they believe it entitled to, in view of the facts and circumstances proven on trial."

In passing upon the question as to whether or not this instruction correctly states the law, the court says:

"It is argued by counsel that the twenty-second paragraph is particularly objectionable, for the reason that the court thereby, in effect, cautions the jury to regard the testimony of the accused with suspicion, on account of his interest in the result of their verdict. It must be admitted that there is very respectable authority which apparently sustains this view; for example: Thomp. Trials, 2446; *Unruh v. State*, 105 Ind. 117, 4 N. E. Rep. 453. We cannot, however, regard it now as an open question in this state."

And, after citing and quoting from two earlier cases, said court disposes of the question as follows: "The instruction in question is in harmony with the rule which has prevailed in this state ever since *St. Louis v. State*, and we can see no sufficient reason for reversing it now." (*Johnson v. State*, 51 N. W. 835.)

In *Pennsylvania Co. v. Versten*, (Ill.) 30 N. E. 540, it is held that "It is proper to refuse an instruction calling the jury's attention to the plaintiff's interest in the suit, as affecting his credibility, where other interested parties who have testified in the case are not mentioned in the instruction."

To same effect is *Phoenix Ins. Co. v. La Pointe*, 118 Ill. 389, 8 N. E. 353, and *Clevenger v. Curry*, 81 Ill. 432.

Before concluding upon this proposition, it may be well to state that, in most, if not all, of the states, whose supreme courts have unqualifiedly approved instructions of this character, there are no constitutional, or statutory, provisions limiting the powers and duties of the trial courts to rulings upon questions of law and making the juries the sole and exclusive judges of all questions of fact. I am authorized to state that Justice McAtee agrees with me that the instruction regarding defendant's credibility and the weight to be given his testimony is prejudicially erroneous.

An application for a change of judge was also made in this case on the ground that the trial judge was biased and prejudiced against defendant, said application containing substantially the language of the statutes; see subdivision 4, sec. 21, ch. 41, Session Laws, 1895. This application was overruled by the court below, to which defendant duly excepted. The writer also believes that this action on the part of the trial court is erroneous and that the statute upon which the application was based is mandatory; however, as none of the other justices concur in this view but, on the contrary, hold that it was entirely proper for the court to overrule said application, (see *Cox v. U. S.* 5 Okla. 701, decided

at this term, were my views upon this question are stated at length) the judgment of the court below must, therefore, in all things be affirmed.

Dale, C. J., who presided in the court below, not sitting; all the other Justices concurring.